[S. F. No. 8552.  In Bank.—June 16, 1920.]

HENRY H. ELLISON et al., Respondents, v. H. S. HENION, Appellant.

[1] PAYMENT—TAKING OF NOTES FOR OPEN-BOOK ACCOUNTS—STATUS OF ACCOUNTS.—Where promissory notes are taken in ordinary course for what has previously been open accounts, the indebtedness for which the notes are taken is not paid in the sense that it is absolutely discharged, and if default be made upon the notes, an action can be maintained upon the original indebtedness, as if the notes had never been given.

[2] ID.—TRANSFER ON NOTES—EFFECT UPON DEBT.—Where notes are taken in ordinary course for a previous indebtedness the notes evidence the debt, and if they are transferred the debt is transferred with them and the original creditor can thereafter maintain no action upon the debt.

---

1. Payment by commercial paper, note, 35 L. R. A. (N. S.) 1.

[3] ID.—TRANSFER OF INDEBTEDNESS—EFFECT UPON LIABILITY OF GUAR-
ANTOR AND STOCKHOLDER.—The guarantor of an indebtedness is not
liable to the original creditor where the latter has transferred the
indebtedness and is no longer the owner of it. The same is true
as to the statutory obligation of the stockholder of a corporation,
when the creditor of the corporation has transferred his claim
against the corporation.

[4] GUARANTY—TRANSFER OF OBLIGATION—EFFECT OF.—While the ob-
ligation of a guarantor is an independent one it is transferred by
the transfer of the obligation guaranteed.

APPEAL from a judgment of the Superior Court of Ala-
meda County. J. J. Trabucco, Judge Presiding. Reversed.

The facts are stated in the opinion of the court,

Frank J. Gordon, Welles Whitmore and R. McMurchie for
Appellant.

Rothchild, Golden & Rothchild and J. A. Pritchard for Re-
spondents.

OLNEY, J.—This is an appeal by the defendant from a
money judgment against him. The following facts appear
without dispute: The defendant and two men by the name of
Pike were stockholders and officers of a corporation known
as the Pike Woolen Company, and the defendant and one of
the Pikes executed to the plaintiffs a joint guaranty of any
indebtedness that the Woolen Company might incur to them.
The Woolen Company did incur such an indebtedness in the
sum of $4,436.81. Thereafter the Woolen Company became
embarassed financially, and for the purpose of arranging its
indebtedness executed two notes, one for six thousand dollars
and one for seven thousand dollars, in favor of a representa-
tive of its creditors, including the plaintiffs. These notes rep-
resented the aggregate of the debts due the creditors, includ-
ing the debt to the plaintiffs. The note for six thousand
dollars was signed by the defendant's coguarantor, Pike
and his wife, as well as by the company, and, as security for
its payment, Pike and his wife also executed a deed of trust
of certain property of their own. The court finds, and we
may assume that the finding is justified by the evidence, that
the defendant consented to the plaintiffs taking these notes.
Payments were made on the notes from time to time, but

finally the Woolen Company defaulted upon them, and the payee of the notes, the representative of the creditors, threatened to sell the property of the Pikes covered by the trust deed. Thereupon the Pikes, or one or the other of them, arranged with the payee of the notes for their purchase or return upon the payment of five thousand dollars. The defendant claims that the arrangement was for the purchase of the notes, and the plaintiffs claim that it was for the return of the notes to the Woolen Company. But whatever may have been the negotiation between the Pikes and the payee, the thing that was finally done was that, in consideration of five thousand dollars paid him, the payee of the notes indorsed them to one of the Pikes. The uncontradicted testimony also is that the notes remained outstanding as obligations of the Woolen Company, and that the five thousand dollars which was paid for the notes was obtained by Pike from a third person by a second hypothecation of his property. The five thousand dollars was distributed by the payee of the notes among the creditors whom he represented, in proportion to their claims. Including their share of this, the plaintiffs received on account of their claim against the Woolen Company a total of $2,174.03, leaving a balance of $2,262.78 on which they received nothing.

Under these circumstances the plaintiffs brought the present action against the defendant, the complaint containing two counts, one on the joint guaranty of the defendant and Pike for the recovery of the unpaid balance mentioned, and the other on the defendant's liability for his proportion of that balance as a stockholder of the Woolen Company. The answer of the defendant pleaded payment of the obligation of the Woolen Company to the plaintiffs, and also set out as a separate defense the facts stated above with reference to the giving of the two notes, and their subsequent transfer to Pike. The trial court found that the original indebtedness of the Woolen Company to the plaintiffs had not been paid, and also, in effect, that the facts alleged as a separate defense were not true. This latter finding must have been an inadvertence, for the facts stated appear without conflict and for the most part in the testimony for the plaintiffs, as well as in that for the defendant. This finding must, therefore, be considered as not sustained by the evidence. The trial

court concluded that the plaintiffs were entitled to recover on both counts, and gave judgment to that effect.

It would seem to be quite evident that the plaintiffs cannot recover against the defendant as the guarantor of a debt of the Woolen Company, or as a stockholder of the company proportionately liable for its debt, if the plaintiffs had, before the commencement of their action, parted with the debt which is the basis of the action. The real question in the case is, had they so parted?

No question is made but that the original debt of the Woolen Company to the plaintiffs was covered into the two notes given the representative of the creditors. There is question made as to whether the two notes were taken in payment. The question, however, would seem to be one largely as to the use of terms, since the fact is clear that the notes were simply taken in ordinary course for what had previously been open accounts. **[1]** It is well established that in such a case the indebtedness for which the notes are taken is not paid in the sense that it is absolutely discharged. If default be made upon the notes, an action can be maintained upon the original indebtedness, as if the notes had never been given.

**[2]** But, on the other hand, the notes evidence the debt and if they are transferred the debt is transferred with them, and the original creditor can thereafter maintain no action upon it. It no longer belongs to him. That the original debt for which a note has been taken passes with the transfer of the note, was directly decided in *Goldman* v. *Murray,* 164 Cal. 419, [129 Pac. 462]. There the plaintiff brought an action to recover from the defendant as a stockholder of a certain corporation his proportion of a certain indebtedness of the corporation. It appeared that the corporation had been originally indebted for money advanced to it and gave its note to its creditor for the amount. The creditor then transferred the note to the plaintiff. The trial court found the note to be invalid as against the corporation, because of want of authority for its execution, but found that the original indebtedness of the corporation had been assigned by the original creditor to the plaintiff and granted a recovery upon it. On appeal, this finding of an assignment was attacked as not supported by the evidence. The only evidence on the point was that the note had been transferred to the plaintiff. It was held that this was enough, that the transfer of the

note was in fact a transfer of the original debt as between the original creditor and the plaintiff, although the note was void as to the corporation. If the transfer of a void note be in effect an assignment of the indebtedness which it was intended to evidence, much more must the transfer of a valid note be in effect an assignment of the indebtedness which it does in fact evidence. (See, also, 7 Cyc. 816; *Harris* v. *Johnson,* 7 U. S. (3 Cranch) 317, [2 L. Ed. 450]; *Looney* v. *District of Columbia,* 113 U. S. 258, [28 L. Ed. 974, 5 Sup. Ct. Rep. 463, see, also, Rose's U. S. Notes]; *Davis* v. *Reilly,* L. R. 1 Q. B. [1898] 1.)

In the present case there is no question as to the fact of the transfer of the notes taken for the indebtedness of the Woolen Company. They were, as we have said, indorsed and delivered to Pike by the payee, the representative of the Woolen Company's creditors, upon the payment to him of five thousand dollars. The indorsements were special; that is, to the order of Pike. **[3]** There is no escape from the conclusion that by this transfer the creditors parted not only with the notes, but with the debts for which the notes were given. In other words, when the plaintiffs brought this action they were not the owners of or interested in the obligation whose guaranty they seek to enforce in one count, and the stockholder's liability pertaining to which they seek to enforce in the other.

The plaintiffs seek to avoid this conclusion by the claim that the payee did not intend to sell the notes to Pike, but to return them to the Woolen Company, and rely upon testimony of the payee to that effect. But whatever he intended, the thing which he did was to transfer the notes by indorsement and delivery, and the legal effect of that which he did cannot be varied in this action, to which Pike is not a party, by evidence that he intended something else. There is, in fact, no evidence here sufficient to warrant a reformation of his transaction with Pike, but even if there were, it would be immaterial. Until the transaction is reformed and the transfer in effect canceled, something which can be done only in an action against Pike, the transfer must be given effect. As long as the transfer stands uncanceled, the Woolen Company is liable to Pike upon the notes. To hold that it was also liable to the plaintiffs upon the original indebtedness for which the notes were given would be to subject it to a double liability for the same obligation.

If the plaintiffs are not the owners of the obligation of the Woolen Company, as we believe it is plain they are not, it would seem to follow almost as of course that they cannot recover on a guaranty of that obligation or upon the defendant's liability as a stockholder for his proportion of it. Whatever rights may exist in these respects would seem plainly to be in Pike as the owner of the notes which evidence the basic obligation. [4] Plaintiffs' counsel nevertheless contend to the contrary in respect to the guaranty, their argument being that the obligation of the guarantor is an independent obligation, which of course it is, in a sense, and therefore not transferred by a transfer of the obligation guaranteed, and cite *Black* v. *Sippy*, 15 Or. 574, [16 Pac. 418], as in point. An examination of this case shows, however, that it is rather an authority for the view we have expressed. A statute of Oregon made both husband and wife liable for supplies furnished the family. The defendant's husband purchased certain family supplies and gave his note for the purchase price. The firm which furnished the supplies then assigned the note to the plaintiff, and the note not being paid, the plaintiff brought suit, not against the husband on his note, but against the wife upon her statutory liability. If, under these circumstances, it had been held that the obligation of the wife had not passed to the assignee of the note, but remained in the assignor, in whose favor the obligation was originally incurred, the case might perhaps be considered as tending to sustain the position of plaintiffs' counsel here. But that is exactly what was not held. On the contrary, it was held that the transfer of the note, evidencing as it did the debt, transferred the wife's liability for the debt, and the assignee of the note was allowed to recover against her. The decision would seem to be very closely in point here in favor of the view we have expressed. In any case, the correctness of that view seems to us almost self-evident.

Judgment reversed.

Shaw, J., Wilbur, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Wilbur, J., and Lennon, J., who were absent.