**PLITT v. STONEBRAKER et al.**

**No. 10945.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 30, 1951.

Decided March 6, 1952.

I. Irwin Bolotin, Washington, D. C., with whom M. Taft Woodruff, Washington, D. C., was on the brief, for appellant.

H. Max Ammerman, Washington, D. C., for appellee, Mildred M. Stonebraker.

Before KIMBROUGH STONE, Circuit Judge, retired (sitting by designation), and EDGERTON and WASHINGTON, Circuit Judges.

STONE, Circuit Judge.

A quantity of beer was seized by the United States Marshal under a writ of attachment issued (August 2, 1948) by the Municipal Court in a proceeding by Mildred M. Stonebraker v. Gold Label Distributing Company. Thereafter, the beer was sold by the Marshal and the proceeds are being held by him. Norman S. Bowles, Jr. has brought a proceeding against Stone-

braker, the Gold Label Distributing Company and the Marshal, claiming ownership of these proceeds by virtue of a "transfer of title and an assignment" of the beer—dated October 17 and 18, 1947—to secure a loan made by him to the Distributing Company. Stonebraker answered denying such transfer of title and assignment. The Distributing Company defaulted.

Thereafter, appellant moved for leave to intervene. The proffered complaint of the intervener states that the loan by Bowles was evidenced by a promissory note—dated October 6, 1947—which was secured by the property seized by the Marshal; that this note was transferred to intervener by Bowles on its date; "that therefore any security given for said note is retained for the benefit of your Intervenor, who is the real party in interest".

The Court denied the motion for leave by an order stating argument by counsel for appellant and for Stonebraker and "it appearing to the Court" that counsel for plaintiff Bowles and for the Marshal "take no position with respect to" the motion for leave to intervene. From that order, Plitt appeals.

Briefs have been filed by appellant and by Stonebraker on the right to intervene and, after argument and upon instruction of the Court, on whether security given to the original creditor after assignment of the debt (the note here) passes to the assignee.

Under Rule 24(a) (3) of the Rules of Civil Procedure, 28 U.S.C.A. an intervention is of right "when the applicant is so situated as to be adversely affected by distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof." This property being in control of an officer of the Court and subject to disposition by the Court, the right of appellant to intervene is to be tested by whether he is "so situated as to be adversely affected by distribution or other disposition" of the funds held by the Marshal.

The claimed interest of appellant in these funds is that they represent the security which he alleges is back of a promissory note owned by him. If these funds are, *in a legal sense* such security, appellant would obviously be "adversely affected" by delivery thereof to plaintiff or to Stonebraker, each of whom is claiming them as of right. Therefore, the controlling issue here is whether these funds are security for payment of the note.

These funds are in place of the beer from sale of which they resulted. There was no transfer or assignment of the beer until ten or eleven days after the promissory note had been sold by Bowles to appellant. The assignment was not to appellant but to Bowles. The complaint herein by Bowles states this assignment was "to secure a loan made by him" to the Gold Label Distributing Company for $9,500. This is the face amount of the promissory note. There is no reasonable room for dispute that the loan intended by Bowles is that represented by the note which Bowles had transferred to appellant some ten days before the assignment. Therefore, the issue as to whether these funds (representing the beer) were security for payment of the note depends upon whether this security, later taken by Bowles for the same indebtedness as covered by the note, inures to the benefit of appellant, the owner of the note.

■ Beyond this main issue, appellee presents several reasons why, she contends, there was no absolute right of intervention by appellant. We will first consider these. Appellee argues that appellant has not shown that he would be adversely affected by denial of intervention because he does not allege that the Distributing Company (maker of the note) has no assets to pay a judgment on the note and cites Sutphen Estates v. United States, 342 U.S. 19, 72 S.Ct. 14. That case is no authority that a note holder is not adversely affected by deprivation of security if the note maker is solvent. That case declares that a guaranty, substituted by decree in an Anti-Trust reorganization, was of equal or better value than the original security and, therefore, the guarantee had not been adversely affected by such substitution. Legal rights to an existing security are not measured by the necessity for security.

Appellee urges that the fact that appellant had theretofore filed suit on the note without claiming any security back of it is material. We do not agree. He is entitled to the benefit of any security even though he may not have known of its existence. 8 Am.Jur. p. 74, § 339, cases in footnote 19.

■ Appellee contends that appellant has not "shown that the form of the alleged security was one which was not personal to the plaintiff below, but was such as should pass to appellant as a matter of law." The complaint of plaintiff (Bowles) alleges a "transfer of title and assignment" made to him "to secure a loan made by him" to the Distributing Company "in the amount of $9,500.00". The motion to intervene alleges that this transfer to Bowles was to secure a promissory note sold to appellant and that appellant is entitled to this security and is the "real party in interest". These pleadings sufficiently present the issue of appellant's right to the security as against Bowles.

■ Appellee asserts that Bowles was not a security holder under the allegations in his complaint that there was "a transfer of title and an assignment" to him of the beer. This allegation is followed, in the same sentence, by the statement that this was "to secure a loan".

Appellee urges that it was fatal that appellant did not "spread upon the record the form of the alleged security he seeks to reach". Under the complaint of Bowles this was a "transfer of title and an assignment". The motion to intervene states that the loan made by Bowles "as alleged in Paragraph Four of the Complaint [of Bowles] filed herein, and secured by the transfer of title to certain goods and chattels, was represented by a promissory note" held by appellant. This is sufficient against this contention of appellee.

While there might well have been more particularity in the pleadings by all parties, yet they do contain the bare bones of their various claims and this record shows no attempt by any party to have any of them made more specific.

■ Appellee contends that the motion to intervene was filed too late. The contest for these funds has limped through much time with no inclination by anyone to reach a conclusion. Bowles filed his complaint, claiming the funds, on April 7, 1949. The Marshal answered promptly. Appellee filed her answer on May 8, 1950. Apparently, the matter was dismissed under the trial Rule 13 for want of prosecution. It was reinstated on November 3, 1950. The motion to intervene and the proposed petition of intervention were filed the next day. There is no merit in this contention.

■ Now we reach the main issue in this appeal. That issue is whether these funds in the hands of the Marshal and subject to control and disposition by the Court inure to the benefit of the holder of the note, for payment of which the beer was transferred as security subsequent to passage of the note to appellant. We think they do so inure.

Diligence of counsel and our own research have failed to find a case directly in point where the transferor of a promissory note has, after such transfer, taken security from the maker of the note for payment of it. However, there are strong analogies which aid, if indeed, they do not control.

One rule is that all security for payment of a promissory note follows the note and inures to the benefit of the holder of the note. Union National Bank v. Matthews, 98 U.S. 621, 625, 25 L.Ed. 188; Lee v. Mitcham, 69 App.D.C. 17, 98 F.2d 298, 300, 117 A.L.R. 1427; District of Columbia v. Hamilton National Bank of Washington, D.C.Mun.App., 76 A.2d 60, 64; Phelan v. Middle States Oil Corp., 2 Cir., 154 F.2d 978, 1001; Rutherford v. Edward L. Eyre & Co., 174 Or. 162, 148 P.2d 530, 152 A.L.R. 1172; 8 Am.Jur. p. 74 § 339 and footnotes thereto. This is true even though the transferee of the note has no knowledge of the existence of this security. 8 Am.Jur. p. 74 § 339 and cases in note 19.

Another rule is that even though notes given for an indebtedness do not ordinarily satisfy the debt yet no action on the indebtedness lies so long as the notes are out-

standing in the hands of other than the original payee. Donnelly v. District of Columbia, 119 U.S. 339, 7 S.Ct. 276, 30 L.Ed. 465; Looney v. District of Columbia, 113 U.S. 258, 261, 5 S.Ct. 463, 28 L.Ed. 974; Black v. J. W. Zacharie & Co., 3 How. 483, 510, 11 L.Ed. 690; Harris v. Johnston, 3 Cranch. 311, 317, 2 L.Ed. 450; Annotation in 85 A.L.R. 1057 to Advance-Rumely Thresher Co. v. Kruger, 93 Mont. 66, 16 P.2d 1102; Annotation in 11 A.L.R. 449 to Ellison v. Henion, 183 Cal. 171, 190 P. 793, 11 A.L.R. 444 and 8 Am.Jur. p. 75 § 340 and footnotes thereto. The reason for this rule is stated by Chief Justice Marshall in Harris v. Johnston, 3 Cranch. 311, at page 317 thus: "The indorsement of the note passes the property in it to another, and is evidence that it was sold for a valuable consideration. If, after such indorsement, the seller of the goods could maintain an action on the original contract, he would receive double satisfaction."

Another rule to be deduced from this reasoning in Harris v. Johnston, supra, is that, at least until dishonor of the note, an indorser cannot enforce security held by him for payment thereof.

The combined effect of these rules is that the holder-transferee, from the original creditor, of an obligation representing an indebtedness has the first call for payment of his obligation and is, legally or equitably, entitled to the benefit of all securities given for such payment. The circumstances that a security for such payment has come into existence after he acquired the obligation is not important.

A useful method of testing a suggested legal principle is to examine the consequences which would result in holding it valid or in holding it not valid.

If the security *does not* inure to the benefit of appellant, we have the results following: the Distributing Company has issued a negotiable promissory note for $9,500 secured by the transfer to payee of the beer (now represented by the impounded funds);

the note has been negotiated by the payee and is now held by appellant; the payee (Bowles) cannot enforce the security because that would open the Company to double payment of the note to the extent of the value realized from the security; the right of Bowles to realize on the security is solely the suspended right of an endorser of the note, which would be recourse for what he might have to pay the appellant because of the indorsement; appellant would have only a simple suit upon the note against the Company as maker or Bowles as endorser. If he recovers in full against the Company, the security must be returned by Bowles to the Company since its purpose has been entirely served. If such recovery is not in full and Bowles, as endorser, must respond, Bowles would then have the security as protection.

If the security *does* inure to appellant, the Company or Bowles can insist that it be applied by appellant to reduce the liability on the note. Thus, every purpose of the security is fully met with the maker, the endorser and the holder having the entire benefit of the security. It would be absurd that this direct, efficient way of handling the situation should be forbidden merely because the security was given to the payee after he had transferred the note to appellant. The law favors the direct approach.

We have here only the pleadings. They raise the issues as to the validity and existence of security given to Bowles by the Company. These are factual matters which go to the merits. They are not before us. All that we determine now is that, on the pleadings, appellant makes a showing that he is a party in interest as to disposition of the impounded funds. As such, he has a right to intervene to protect the interest which he alleges.

The decree or order denying intervention is reversed and the case remanded with directions to allow the intervention of appellant.

Reversed and Remanded.